**Tagged Opinion**

ORDERED in the Southern District of Florida on Feb 27, 2009



John K. Olson, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

**JAMES P. DRISCOLL,**

    Debtor.

_____/

Case No.: 06-12420

Chapter 7

**ORDER OVERRULING LIMITED OBJECTION OF KENNETH WELT, CHAPTER 7 TRUSTEE FOR PATRICK POWER CORP., TO MOTION TO AUTHORIZE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES, WITH LIENS AND ENCUMBRANCES TO ATTACH TO THE PROCEEDS OF SALE**

**THIS MATTER** came before the Court on the Limited Objection of Kenneth Welt, Chapter 7 Trustee for Patrick Power Corp., to Motion to Authorize Sale of Real Property Free and Clear of Liens and Encumbrances, with Liens and Encumbrances to Attach to the Proceeds of Sale (the

"Objection"). *See* [DE 193]. The substantive issue at hand is whether a real property lease at the heart of the objection may be legally severed into two contracts, with one being accepted and the other rejected by the same bankruptcy estate. I find the subject contract to be a single, solitary agreement, terminated upon rejection, and further find a claim of undue enrichment to be inappropriate given the facts of the case. Accordingly, the Objection is overruled.

## FACTS

### 1. Procedural History

On June 6, 2006, Patrick Power Corp. ("PPC") and James P. Driscoll ("Driscoll") each filed voluntary petitions for Chapter 7 bankruptcy relief. *See* [DE 1]; *See also* [DE 1], *In re Patrick Power Corp.*, No. 06-12423 (Bankr. S.D. Fla. 2006). Kenneth Welt ("Welt" or "Trustee Welt") was appointed as Trustee for PPC; Marika Tolz ("Tolz" or "Trustee Tolz") was appointed in the same capacity for Driscoll. *Id.* On January 10, 2007, Trustee Tolz filed a Motion to Authorize Sale of Real Property Free and Clear of Liens and Encumbrances, with Liens and Encumbrances to Attach to the Proceeds of Sale (the "Motion"). *See* [DE 174]. On January 31, 2007, Trustee Welt filed the Objection. *See* [DE 193]. Trustee Tolz filed her response to the Objection (the "Response") on February 2, 2007. *See* [DE 195]. On February 20, 2007, Trustee Welt filed a memorandum in support of the Objection ("Trustee Welt's Memorandum") *See* [DE 213], and, one month later, on March 2, 2007, the Trustee Tolz filed her memorandum in opposition to Trustee Welt's Objection ("Trustee Tolz' Memorandum") was filed. Oral arguments on the Objection were held on September 16, 2008.

### 2. Relevant Facts

The facts of this matter, as proffered by counsel in various court filings, are generally without

meritorious dispute. Driscoll Building Company, ("DBC") prior to the aforementioned bankruptcy filing of Driscoll, retained an ownership interest in property at 5691 NE 14th Avenue, Fort Lauderdale, Florida, 33334. On December 15, 1998, PPC entered into a lease for use and enjoyment of the property, in exchange for good and valuable consideration of $69,360.00 a year in rent, with successive annual lease renewal unless and until PPC provided notice of termination. The terms of this initial agreement are relatively standard and without contention in the instant controversy.

On January 1, 2000, an addendum to the lease was executed by both parties, providing in relevant part:

> In the event the Landlord sells or otherwise disposes of the property so that the Tenant can no longer occupy the property, Landlord agrees to pay the Tenant the unamortized balance of any leasehold improvements related to the property. The amount of the unamortized leasehold improvements shall be determined in accordance with Generally Accepted Accounting Principles.

The addendum contained no other material provisions, though two subsequent addenda were executed on May 1, 2001, and January 1, 2006, modifying the monthly payments due to DBC. PPC allegedly did perform improvements upon the property.[1]

Following PPC's bankruptcy filing, Trustee Welt, pursuant to 11 U.S.C. § 365(a), rejected the subject lease as of the petition date. Thereafter, at some juncture in the fall of 2006,[2] the

---

[1] In Trustee Tolz' Memorandum, these are referred to as "alleged capital improvements." *See* [DE 224]. For purposes of considering this Objection, this court will assume that substantive improvements were indeed made to the property, but also recognizes that the precise nature - and unamortized value - of such improvements is a matter of potential factual dispute and not currently before the court.

[2] The precise date upon which the premises were vacated has not been provided to the court. Paragraph 16 of Trustee Tolz' Memorandum provides, "Trustee Welt vacated the premises in the fall of 2006, having never paid rent or otherwise performed under the Lease Agreement." *See* [DE 224].

premises were vacated. On February 12, 2007, this court entered an order authorizing the sale of the subject property, reserving judgment on this Objection. *See* [DE 205].

## DISCUSSION

### 1. Severability

In the Objection, Trustee Welt contends "the Reimbursement Agreement was a severable, non-executory agreement which was not subject to rejection." *See* [DE 193]. This argument is unavailing. As Trustee Tolz submits, the base lease and addendum constitute a singular executory agreement.

The United States Court of Appeals for the Eleventh Circuit has ruled "that the terms of a transaction are set forth in one instrument is not conclusive evidence that the parties intended to make only one contract, but is only a factor in determining intent." *In re Gardinier*, 831 F.2d 974, 976 (11th Cir. 1987). The same case delineates a cogent three-prong test for substantively determining whether a single document contains one or more contracts: whether (1) "the nature and purpose of the agreements are different," (2) if "the consideration for each agreement is separate and distinct," and (3) whether "the obligations of each party to the instrument are not interrelated." *Id.* Instances where severability is permissive are certainly rare; as Judge Gerber observes, "Generally, in order for an unexpired lease to be assumed or rejected, the lease must be assumed or rejected in its entirety." *In re Adelphia Business Solutions, Inc.*, 322 B.R. 51, 54 (Bankr.S.D.N.Y. 2005).

Applying the first prong of the test, in this case, the nature and purpose of the agreements is the same. PPC agreed to pay DBC monthly rent, receiving, in return, a parcel of property for its continuous use and enjoyment. To the extent the relevant property proved unsatisfactory, both parties had a mutual interest in seeing the parcel's flaws remedied; to wit: PPC's desire for an

acceptable property and DBC's desire for tenant retention. The addendum, however, is not a contract for specific improvements, nor is it a designation of PPC to act as a contractor in the furtherance of such improvements.

The addendum is an integral component of the original lease inasmuch as it serves to further the landlord/tenant relationship and prevent termination. To be sure, the purpose of the addendum is not to contract for certain improvements to the property; it is, rather, to permit the tenant to alter the property in the manner requisite for sufficient enjoyment, whilst providing for reimbursement in the event of Landlord sale or disposition so as to prevent DBC from taking unfair advantage of any heightened property value that would stem from such improvements. The addendum does provide, "The parties agree to modify the lease as follows as an inducement for the Tenant to improve the property." *See* [DE 224]. However, it is significant that the addendum's reimbursement clause executes only in the event of the Landlord's sale or disposal of the property. If this was an independent contract for improvements to the property, then compensation would not be contingent upon sale or disposition.

Though the three prong test promulgated by the United States Court of Appeals for the Eleventh Circuit fails on the first element, a brief discussion of the latter two issues is appropriate. The second question, that of separate and distinct consideration, appears perhaps the most simplistic here. The original lease provides for an exchange of monthly rent payments and use of the property; the addendum provides for improvements and reimbursement upon sale or disposal. To conflate these two forms of consideration would be contra to the plain realities of the situation; they are very clearly separate and distinct. In this sense, the second prong of the test is satisfied, and would favor severability of the subject contract.

The final consideration is whether the obligations of each party are interrelated. In this case, the initial lease is clearly effective with regard to the addendum; improvements do not excuse the obligation to pay rent, and compensation for the improvements is obviously not a substitute for the landlord furnishing the property. Moreover, the addendum acts with regard to the initial lease - payment for improvements is triggered only upon sale or disposition and, at that, only if such leads to a situation wherein "the Tenant can no longer occupy the property." *See* [DE 224]. That the addendum does not per se create any obligations on the part of the tenant - improvements are purely discretionary - is immaterial; to the extent that the addendum does create an obligation (which is effective only with regard to the landlord), it is interrelated to the initial lease since it is only triggered in the event of the lease's demise under a very specific set of circumstances. Thus, the third prong - like the first - fails in this case.

Accordingly, I find that the lease is not a severable contract and overrule the Objection with regard to that claim.

**2. Nature of Contract**

Trustee Welt contends the reimbursement agreement to not be an executory contract and, ergo, not be subject to rejection under 11 U.S.C. § 365. The manner in which this argument is proffered is largely contingent upon the addendum being a discreet agreement, a finding I have declined to reach. However, a brief discussion of why the subject agreement is executory in nature is in order.

Congress, in its infinite legislative wisdom, declined to define the term "executory contract"

in 11 U.S.C. § 101[3] or any other provision of the Bankruptcy Code. There are, however, two definitions which have been commonly used by the courts to determine whether or not a subject agreement is an executory contract. The first, posited by noted scholar Vern Countryman more than fifty years ago, is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Knutson*, 563 F.2d 916, 917 (8th Cir. 1977) (quoting V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973)). The second, developed over time, posits, "[T]he question of whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate." *In re General Development Corp.*, 84 F.3d 1364, 1375 (11th Cir. 1996). This has been deemed the "functional approach." *Id.*

Applying the Countryman definition, it is clear that this is an executory contract. PPC's failure to furnish monthly rent would have given rise to a material breach excusing performance of DBC. Likewise, DBC's failure to furnish the property would have given rise to a material breach excusing performance of PPC. Similarly, an application of the "functional approach" reveals that Trustee Welt's rejection of the contract was not out of utter indifference but, rather, benefit to the estate.

Accordingly, I find that the lease is an executory contract and overrule the Objection with regard to this claim.

### 3. Termination

---

[3] 11 U.S.C. § 101 is the initial portion of the Bankruptcy Code, containing definitions of most relevant terms of art contained subsequently in its text.

Trustee Welt argues that rejection of a contract under 11 U.S.C. § 365 does not per se equate to termination of that agreement, while Trustee Tolz, in turn, contends it does. I find the lease in this case to have been effectively terminated for the narrow purposes of this objection.

While various courts have considered whether or not rejection under 11 U.S.C. § 365 *ipso facto* amounts to termination, holdings with regard to this delicate question tend to be abrasively narrow. In 1992, Judge Mark wrote:

> This Court agrees that rejection does not always equal termination of executory contracts. I nevertheless agree with the majority of cases which hold that rejection does equal termination of non-residential real property leases in which the debtor or Trustee is the lessee. The primary reason for reaching this result is the specific statutory language in § 365(d)(4). That section provides that if the Trustee does not assume an unexpired lease within 60 days of the filing date or within such time as the Court may have fixed, 'then such lease is deemed rejected, and the Trustee shall immediately surrender such non-residential real property to the lessor.'

*In re 6177 Realty Associates, Inc.*, 142 B.R. 1017, 1019 (Bankr.S.D.Fla. 1992)(quoting in part 11 U.S.C. § 365(d)(4))(citations omitted). However, in 1997, Judge Jennemann observed of the impact of Florida law on a specific fact pattern before her court, "The Debtor clearly had abandoned the leased premises and surrendered the keys. The Creditor had changed the locks and advertised the premises for rent before the Debtor filed for bankruptcy. However, these actions do not result in the termination of the Lease under Florida law." *In re Florida Lifestyle Apparel*, 221 B.R. 897, 901 (Bankr.M.D.Fla. 1997). Citing to this decision, among others, Judge Mark then held in a subsequent decision that surrender of rights under a lease pre-petition do not per se lead to the termination of that lease. *In re CHS Electronics, Inc.*, 265 B.R. 339, 342 (Bankr.S.D.Fla. 2001). Accordingly, while Judge Mark's holding in *In re 6177 Realty Associates, Inc.* technically remains good law, the theoretical underpinning of the decision has essentially been stripped.

8

Other courts have provided an eclectic variety of holdings. In 1992, the United States District Court for the District of Delaware found, "Rejection of a non-residential lease results in termination of the lease." *Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 97, 98 (D.Del. 1992). And just last year the United States Court of Appeals for the Eleventh Circuit held, "[R]ejection 'does not embody the contract-vaporizing properties so commonly ascribed to it. ... Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear.' More specifically, '[r]ejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated.'" *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 703 (Bankr.S.D.N.Y. 1992)).

Fortunately, the subject lease in this case does not embody the rich complexities that may give rise to a further muddying of matters. While the case law may be in a state of prudish conflict, neither of the relevant alternatives, applied to the instant matter, would have a substantive affect. The rights Trustee Welt seeks to enforce under the contract are those posited in the addendum. As discussed above, the relevant language provides, "In the event the Landlord sells or otherwise disposes of the property so that the Tenant can no longer occupy the property..." *See* [DE 224]. While there is no dispute that the property has, at this juncture, been sold, it is equally clear that the relevant sale is not - and was not - the event foreclosing PPC from occupation of the property. That event was the rejection of the lease pursuant to 11 U.S.C. § 365. Under the terms of the contract, it is clear that the reimbursement clause only vests in the contingency of a landlord sale or disposition which creates a situation whereby "the Tenant can no longer occupy the property." Such patently is not the case here.

9

Accordingly, I find that the relevant portion of the contract did terminate upon PPC's rejection of the lease, and overrule the Objection with regard to that claim.

### 4. Unjust Enrichment

Welt further objects on the grounds of unjust enrichment, an equitable claim Trustee Tolz posits to be inapplicable to the fact pattern at hand. I find the suggestion of unjust enrichment to be inappropriate as applied to this case, and accordingly deem Trustee Welt's argument to be unavailing.

As a Florida appellate court recently noted, "The essential elements included under a theory of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Ruck Brothers Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205, 207 (Fla. 2d DCA 1995).

While, *arguendo*, it may be competently contended that improvements to the property by PPC benefitted DBC, and that such benefits were realized in sale of the property, this claim for equitable relief in the instant case is without merit. I have found the relevant contract to be a singular, non-severable agreement. It stands to reason that in the negotiation - and regular renewal - of such an agreement, both parties exchange forms of consideration for their mutual and separate betterment. To whatever extent PPC saw fit to improve the property, consideration was surely contemplated - in the form of an appropriate monthly rent quote and, yes, in the form of an addendum providing for reimbursement upon the occurrence of certain defined circumstances. That the latter event never vested is not inequitable, it is merely the reality of the contract freely negotiated. Moreover, for PPC to reject the contract and then claim equitable relief because its

rejection creates an inequitable situation is an exercise in absurdity.

Fundamentally, a tenant who elects to improve a property does so at his or her own peril. Should a relevant lease provide for reimbursement commensurate with such improvements, this element of peril is removed. However, the only contractual provision in this case was so narrowly tailored as to not vest under the circumstance of tenant breach. Thus, the addendum does not act with regard to the improvements, and I must return to the ordinary principle that a tenant improves property at a requisite degree of peril. The situation posited here is genuinely no different than the hypothetical one might often engage of a residential apartment tenant sprucing things up to further enjoy occupation. When that resident is forced to leave the premises because of his or her own breach of the lease, however, it is not common to find a spurious claim in equity for reimbursements of those improvement expenses. Such is very much the case here.

Accordingly, I find the claim of unjust enrichment to be errant and overrule the Objection with regard to that claim.

For the reasons stated above, it is hereby **ORDERED** that:

1. The Limited Objection of Kenneth Welt, Chapter 7 Trustee for Patrick Power Corp., to Motion to Authorize Sale of Real Property Free and Clear of Liens and Encumbrances is **OVERRULED.**

###

Copies furnished to: